THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MYMAIL, LTD., | § § | |
| *Plaintiff*, | § § | Case No. 2:18-CV-00015-JRG-RSP (LEAD CASE) |
| v. | § § | |
| HP INC. | § § | Case No. 2:18-CV-00016-JRG-RSP |
| *Defendant*. | § § § § | |

## MEMORANDUM OPINION AND ORDER

On October 29, 2018, the Court held a hearing to determine the proper construction of two disputed claim terms in the United States Patent No. 8,732,318 ("the '318 patent"). *See* Dkt. Nos. 55, 64. The Court has considered the arguments made by the parties at the hearing and in their claim construction briefings. Dkt. Nos. 59, 60, and 61.[1] The Court has also considered the intrinsic evidence and made subsidiary factual findings about the extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The Court issues this Claim Construction Memorandum and Order in light of these considerations.[2]

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

[2] Claim construction briefs relating to defendants that have been dismissed are not referenced in this Order.

**Table of Contents**

**I. BACKGROUND**...................................................................................................3

**II. LEGAL PRINCIPLES**........................................................................................5

**III. COLLATERAL ESTOPPEL / ISSUE PRECLUSION**....................................8

**IV. CONSTRUCTION OF DISPUTED TERMS**....................................................9

    A. "network service provider (NSP)" ........................................................................9

    B. "access provider"..................................................................................................16

**V. CONCLUSION**....................................................................................................20

## I. BACKGROUND

Plaintiff MyMail brings suit alleging infringement of United States Patent No. 8,732,318 ("the '318 patent") by Defendant HP.

The application leading to the '318 patent was filed on April 16, 2003 and issued on May 20, 2014. The '318 patent is entitled "Method of Connecting a User to a Network." In general, the '318 patent is directed to a method and apparatus for connecting and/or simplifying user access to a network.

Figure 1 of the '318 patent is reproduced below:



FIG. 1

The Abstract of the '318 patent states:

> The present invention comprises a method of and apparatus for simplifying the process of access to a network for a roaming computer user, divides the responsibility of servicing a given user wanting to access the network between multiple parties and minimizes the possibility of improper dissemination of email header data as well as improper use of network resources (including server systems) by non-clients.

The only asserted claim in this lawsuit is independent claim 5, which is reproduced below:

> A method of obtaining a set of network access information comprising the steps of:
> modifying a stored set of network access information using
> > new information downloaded, via the network, to a network access device from an access provider connected to said network; and
> the network access device re-accessing the network via a given
> > network service provider (NSP) using the modified set of network access information.

The '318 patent is a division of an application that resulted in U.S. Patent No. 6,571,290 ("the '290 patent"). The '290 patent shares a nearly identical specification with the '318 patent and is entitled "Method and Apparatus for Providing Fungible Intercourse over a Network."

The '290 patent and related litigation background is highly relevant for this lawsuit and claim construction proceeding. Plaintiff previously asserted the '290 patent against other defendants in the Eastern District of Texas. *See, e.g., MyMail, Ltd. v. America Online, Inc.*, No. 6:04-cv-189 (E.D. Tex.) (the "prior litigation"). In that case, Judge Davis construed numerous terms in the '290 patent, including the two same or similar terms that are now disputed in this case. After claim construction, the Defendants successfully moved for summary judgment of non-infringement. Plaintiff appealed to the Federal Circuit, which ultimately affirmed the claim construction and summary judgment of non-infringement. *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1376-79 (Fed. Cir. 2007). For this case, the parties dispute the relevance and

preclusive effects of the prior litigation and the prior Federal Circuit opinion, including the prior constructions of the disputed terms.

## II. LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

"In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharms. USA*, 135 S. Ct. at 841 (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips*, 415 F.3d 1303. In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in

which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314–17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during

7

prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319–24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323–25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

### III. COLLATERAL ESTOPPEL / ISSUE PRECLUSION

The parties dispute the terms "network service provider" (or "NSP") and "access provider," which are both recited in claim 5 of the '318 patent. Judge Davis previously construed the terms

8

"network service provider" (NSP) and "access service provider" in relation to the parent '290 patent. On appeal, the Federal Circuit affirmed the construction of NSP. The parties dispute whether collateral estoppel and/or issue preclusion applies to the '318 patent for the disputed "NSP" and "access provider" terms. In particular, Defendant argues that collateral estoppel / issue preclusion applies because all four factors of the Fifth Circuit test for collateral estoppel applies: (1) the issues under consideration are the same, (ii) the issue was fully and vigorously litigated in the prior action, (iii) the issue was necessary to support the judgment in the prior case, and (iv) there are no special circumstances that would render issue preclusion unfair. *See, e.g.*, Defendant's Response, Dkt. No. 60, at 5-12. Plaintiff argues that issue preclusion does not apply and that none of these four factors support preclusion. *See, e.g.*, Plaintiff's Reply, Dkt. No. 61, at 1-6.

Although the Court finds that the Defendant provides good arguments as to why collateral estoppel may apply to these disputed terms, the Court finds that it need not rule on this issue for this claim construction proceeding. Instead, the Court will address the construction of the disputed terms on their merits and the intrinsic record without relying on and/or ruling on the issue of collateral estoppel.

## IV. CONSTRUCTION OF DISPUTED TERMS

The parties' positions and the Court's analysis as to the disputed terms are presented below.

### A. "network service provider (NSP)"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "hardware and/or software that provides a connection to a network" | "a party that provides a connection to the network and authenticates users for access to the network" |

The disputed term "network service provider" (NSP) appears in independent claims 3 and 5 of the '318 patent.

### (1) The Parties' Positions

Plaintiff argues that the NSP term is hardware and/or software that provides a connection to a network. *See, e.g.*, Dkt. No. 59, Plaintiff's Opening Claim Construction Brief, at 14-20. Plaintiff contends that there is nothing in the claims or specification that require the NSP and access provider to be a different corporate entity or different system. *Id.* at 17. Plaintiff argues that the parties clearly dispute whether the term "party" includes or excludes hardware and/or software. *Id.* at 18. According to Plaintiff, a reference to a party includes a reference to hardware and/or software, and that a party cannot perform the claimed method without hardware and/or software. *Id.* Plaintiff argues that a construction that excludes hardware and/or software would be contrary to reality. *Id.* at 19. Plaintiff further argues that there is no language in claim 5 of the '318 patent that requires authentication, and there is nothing in the claim that requires or suggests the NSP must perform authentication. *Id.* at 20. Plaintiff argues that in one embodiment of the specification, "access service" performs authentication for one or more NSPs. *Id.* Plaintiff argues that claim 5 is "agnostic" whether the NSP, the access provider, or another system provides the authentication. *Id.* at 20-21.

Defendant responds that the specification "coined" the NSP term and is bound by the representations in the specification regarding the NSP term. *See, e.g.*, Dkt. No. 60, Defendant's Responsive Claim Construction Brief, at 12-17. Defendant argues that based on the teachings in the specification, the NSP must be a party. *Id.* at 13-15. Defendant contends that one of skill in the art would have understood that a "party" was a juristic entity, not just hardware or software. *Id.* at 14. Defendant argues the fact that a NSP may utilize hardware and/or software may be true but misses the point as to underlying meaning of the NSP term itself. *Id.* Regarding "authentication," Defendant argues that the specification defines distinct roles for a NSP and an

ASP, and that the ASP provides access information to users so that they can connect to a given NSP. *Id.* at 15. According to Defendant, the only portion of the specification in which the ASP performs authentication instead of the NSP is a single embodiment, but that embodiment was disclaimed in the prior litigation and claim 5 is substantially identical to the prior claims in the prior litigation regarding this feature. *Id.* at 15-16.

In its Reply, Plaintiff argues that an ISP need only provide internet access to be an ASP, and an NSP need only provide network access. *See, e.g.*, Dkt. No. 61, Plaintiff's Reply Claim Construction Brief, at 9. Plaintiff argues that the defining trait of an ISP or NSP is providing network access, not authentication, which can be delegated. *Id.* Plaintiff also argues that access information is broader than authentication information. *Id.* Regarding the "party" dispute, Plaintiff argues that a "party" is similar to an "entity," and the specification mentions that an "entity" may refer to software and hardware. *Id.* at 10. Plaintiff argues that Defendant's separation of the parties as being separate corporate entities ignores the claim language and selectively reads from the specification, and is not supported by the prosecution history. *Id.*

### (2) Analysis

Defendant's construction for the "network service provider" term is identical to the construction provided to this term by Judge Davis and affirmed by the Federal Circuit. The parties dispute two primary issues as to this term: (1) whether the term is limited to a "party" or to "hardware and/or software," and (2) whether the term requires "authentication."

The term "network service provider" appears in independent claim 5, reproduced below:

A method of obtaining a set of network access information comprising the steps of:

> A method of obtaining a set of network access information comprising the steps of:
> modifying a stored set of network access information using

> new information downloaded, via the network, to a network access device from an access provider connected to said network; and
>
> the network access device re-accessing the network via a given **network service provider (NSP)** using the modified set of network access information.

(emphasis added).

Based on the plain language of claim 5, a given "NSP" is used to connect to the network by using the modified set of network access information.

The '318 patent expressly mentions that the "NSP" term is a "coined" term in the '318 patent. Col. 5, ll. 39-44. The '318 patent states that an "internet service provider" (ISP) includes network access providers (NAPs) and Network Service Providers (NSPs). Col. 6, ll. 11-15. The only reference to NSP in the '318 patent is in the context of the ISP authentication process. Col. 7, ll. 3-9. Thus, as envisioned in the '318 patent, a NSP is a type of ISP, and in general the '318 patent equates the functions of an NSP with the functions provided by an ISP.

Authentication

Regarding the "authentication" dispute, the vast majority of the '318 patent specification requires an ISP and/or NSP to authenticate the user. The specification provides distinct roles for the access service / ASP 106 and the NSP/ISP 102. *See, e.g.*, FIG. 1. The ASP provides access information to users so that they can connect to a given NSP. *See, e.g.*, col. 7, ll. 48-56; col. 8, ll. 30-38. The '318 patent teaches that the ISP authenticates the user and checks to confirm that the ID and password is valid. *See, e.g.*, col. 6, l. 67 – col. 7, l. 21*; see also* col. 2, ll. 16-27. The '318 patent also references an NSP in the context of the ISP authentication process. Col. 7, ll. 3-9. Because ISP is used synonymously with NSP, the '318 patent teaches that the NSP authenticates users using the access information. This teaching in the specification is consistent with the

language of claim 5, which requires the NSP to use the modified set of network access information to re-access the network.

There is a sole embodiment in the '318 patent that supposedly does not require the NSP to perform the authentication step. *See, e.g.*, col. 23, ll. 42-64. Plaintiff argues that this sole embodiment is proof that the NSP of claim 5 does not authenticate. In the prior litigation, Plaintiff conceded that this embodiment was not claimed; however, Plaintiff has not made this express concession in this litigation.

While the prosecution history to the '318 patent is not particularly helpful as to this disputed term, it is nonetheless still instructive. For example, in its March 4, 2010 response to an office action, the Applicant relied upon numerous portions of the specification in describing its claimed invention as set out in then-pending claim 3 (which later issued as claim 5 of the '318 patent), and none of the specification citations pointed to the alternative embodiment found at col. 23 in the '318 patent that Plaintiff now argues is relevant for the NSP term. Similarly, in its Appeal Brief during prosecution of the '318 patent, Applicant relied on portions of the specification that generally require the NSP to perform the authentication portion and did not once rely on the alternative embodiment. Overall, the Court is not convinced, and finds no support in favor thereof, that claim 5 covers the alternative embodiment found at col. 23, ll. 42-64 of the '318 patent and/or that authentication is not a required function of the NSP.

The Federal Circuit's opinion on the NSP term is informative. First, the Federal Circuit found that the NSP is a "coined term" without a meaning apart from the patent. *MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1376 (Fed. Cir. 2007). Second, the Federal Circuit agreed with the district court that "authentication is a required function of the NSP and that the functions performed by the NSP in the defendants' systems do not constitute authentication." *Id.* at 1375-

1377. The Federal Circuit found that the specification shows that the ASP cannot perform the required authentication, and that the specification describes the authentication and connection steps as being completed before the ASP becomes relevant. *Id.* at 1376.

In addition to the overwhelming specification support that the NSP must perform authentication, the Court finds that claim 5 itself supports a finding that authentication is required by the NSP. First, the language surrounding the NSP term in claim 5 is consistent with the language used in the specification requiring authentication by the NSP. Second, the requirement for the NSP to use the modified set of network access information for re-accessing the network strongly suggests that authentication is performed; otherwise there would be no need for the NSP to use the modified set of network access information.

Consistent with the Federal Circuit's opinion (albeit in context of the parent '290 patent), the Court finds that the intrinsic evidence, including the specification and claims of the '318 patent, require the NSP to perform an authentication function.

Party v. Hardware/Software

Regarding the "party" dispute, the Court finds that, overall, the claims and specification supports a "party" limitation to the NSP term.

First, claim 5 treats the "network service provider" and "access provider" limitations as more than just being hardware and/or software. For example, the Court notes that a constituent term of the "network service provider" term is the word "provider." The basic understanding of a "provider" is generally a person or party that provides. The Court finds that the use of the term "provider" in the disputed term implies more than just hardware and/or software. In other words, the Court finds that one of ordinary skill in the art would not consider a "network service provider" to be merely "hardware and/or software." Indeed, claim 5 uses the modifier "given" right before

14

NSP, implying that the claimed given NSP is a particular party or entity, not just general hardware and/or software.

Second, the specification repeatedly discusses the idea of a "party" in connection with the claimed invention. The Abstract of the '318 patent states that the present invention "divides the responsibility of servicing a given user wanting to access the network between multiple parties." This inventive purpose is repeated in the Summary of the Invention section of the '318 patent. *See, e.g.*, col. 3, ll. 46-52. The '318 patent has numerous references to an ISP in the Background section, and they generally refer to an ISP as being a party instead of just hardware or software. The '318 patent mention specifically mentions that ISPs and Network Access Providers (NAPS) are "companies which own telephone networks and modem banks such as AT&T, GTE, UUNet, PSI, etc." *See, e.g.*, col. 4, ll. 64-67. This suggests that a "provider" – as taught in, referred to, and claimed by the '318 patent – is a party, like the AT&T, GTE, etc. companies.

The Court rejects Plaintiff's proposed limitation of "hardware and/or software" as not being supported in the specification or the claims. Further, the Court finds that Plaintiff's limitation to a generic "hardware and/or software" limitation for both of the "NSP" and "access provider" terms provides little material difference to these separate terms.

The Court finds that the intrinsic evidence, including the specification and claims of the '318 patent, require the NSP to be a "party." The Court notes that, at this time, it is not deciding the issue on whether the "NSP" and the "access provider" must be separate "parties" or may be the same "party."

On balance, and for the reasons described above, the Court is not persuaded by the Plaintiff's arguments and rejects them accordingly. The Court finds that the NSP term is limited to a party and that it requires authentication. Regarding the "user" limitation proposed in the

Defendant's construction, claim 5 does not expressly recite a "user," and thus the Court finds that a "user" limitation is not necessary for the construction of the NSP term for this claim dispute.

In addition to support by the underlying intrinsic evidence, the Court has not found any evidence that the Federal Circuit's opinion is wrong and/or inapplicable to the NSP term disputed in claim 5 of the '318 patent. The Federal Circuit's similar construction of the term confirms the Court's construction.

The Court hereby construes the term "**network service provider**" to mean "**a party that provides a connection to the network and authentication for access to the network.**"

### B. "access provider"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "hardware and/or software that provides network access information" | "a party that provides authenticated access information to a user through the network to enable the user to access one or more NSPs" |

The disputed term "access provider" appears in independent claim 5 of the '318 patent.

#### (1) The Parties' Positions

Plaintiff argues that the access provider term is hardware and/or software that provides network access information. *See, e.g.*, Dkt. No. 59, Plaintiff's Opening Claim Construction Brief, at 14-20. Plaintiff contends that the term "access provider" was not construed in the prior litigation. *Id.* at 14. Plaintiff argues that there is nothing in the claims or specification that require the NSP and access provider to be a different corporate entity or different system. *Id.* at 17. Plaintiff argues that the parties clearly dispute whether the term "party" includes or excludes hardware and/or software. *Id.* at 18. According to Plaintiff, a reference to a party includes a reference to hardware and/or software, and that a party cannot perform the claimed method without

16

hardware and/or software. *Id.* Plaintiff argues that a construction that excludes hardware and/or software would be contrary to reality. *Id.* at 19.

Defendant responds that the "access provider" term is another variation of the "access service provider" term that was previously disputed and construed. *See, e.g.*, Dkt. No. 60, Defendant's Responsive Claim Construction Brief, at 18-27. Defendant argues that the specification, the claims, and the prosecution history treat the "access provider" term the same as the "access service provider" term. *Id.* Defendant contends that the prior litigation construed the terms "access SP," "access service," "access service provider," and "ASP" as the same, and confirms the fact that the "access provider" term is just another variation of the same ASP term. *Id.* at 22. Regarding the "party" dispute, Defendant argues that the patent describes the necessary relationships between the parties responsible for servicing the user, and that the claims and the specification confirm that the "access provider" is a "party." *Id.* at 23. Further, Defendant argues that Plaintiff's construction of hardware and/or software for both NSP and ASP makes no distinction between those terms. *Id.* Like the NSP term, Defendant argues that one of ordinary skill in the art would recognize that the access provider term is a juristic entity. *Id.* Defendant also argues that the specification and claim is clear that the ASP provides information to allow the network access device to re-access the network via a given NSP. *Id.* at 26.

In its Reply, Plaintiff argues that the term "access provider" is broader than "access service provider." *See, e.g.*, Dkt. No. 61, Plaintiff's Reply Claim Construction Brief, at 7-9. Plaintiff argues the fact that "access provider" is used in claim 5 and "access service" is used in claim 1 supports a claim differentiation argument between the two terms. *Id.* at 7. Plaintiff argues that because the "access provider" term is broader than an ASP, functions performed by an ASP in the specification are relevant to the term but are not limiting. *Id.* at 8. Regarding the "party" dispute,

17

Plaintiff argues that a "party" is similar to an "entity," and the specification mentions that an "entity" may refer to software and hardware. *Id.* at 10. Plaintiff argues that Defendant's separation of the parties as being separate corporate entities ignores the claim language and selectively reads from the specification, and is not supported by the prosecution history. *Id.*

### **(2) Analysis**

Defendant's construction for the "access provider" term is identical to the construction provided to the "access service provider" term by Judge Davis. The parties' primary dispute as to this term is whether it is limited to a "party" or to "hardware and/or software," and whether it is the same as the previously construed "access service provider" term.

> A method of obtaining a set of network access information comprising the steps of:
> modifying a stored set of network access information using
> > new information downloaded, via the network, to a network access device from an **access provider** connected to said network; and
>
> the network access device re-accessing the network via a given
> > network service provider (NSP) using the modified set of network access information.

(emphasis added).

As an initial matter, the Court finds that the "access provider" term is the same term as the related "access service," "access service provider," "access SP," and "ASP" terms. The specification provides no material difference to the "access provider" term as opposed to the other related ASP terms. Indeed, Plaintiff recognizes this fact, but argues that the "access provider" term is broader than an ASP because "access provider" does not use the "service" word present in the ASP terms; however, Plaintiff nonetheless relies on the portions in the specification related to ASP for non-limiting support. The Court is not persuaded by Plaintiff's arguments. The fact that claim 1 uses the term "access service" and claim 5 uses the term "access provider" does not

necessarily mean that the terms must have different meanings. The Court finds no material difference in the use of the "access service" term in claim 1 and the "access provider" term in claim 5. Further, the Court finds no material difference in how the ASP terms are defined and used in the specification as opposed to "access provider." Indeed, besides the reference to "network access providers" / NAPs, there is limited support for the "access provider" term in the specification. Still further, during prosecution of the '318 patent, the Applicant treated the "access service" and "access provider" terms as the same when it cited to and relied on portions of the specification referencing "access service" for its support of the "access provider" term. *See, e.g.*, March 4, 2010 Response to Office Action, at pages 18-19; Applicant's Appeal Brief, at pages 4-5. Thus, for at least these reasons, the Court rejects Plaintiff's arguments that the term "access provider" is materially different than "access service provider" (ASP) and the related ASP terms.

Regarding the parties' dispute as to the "party" versus hardware/software limitations, the Court finds that, overall, the claims and specification supports a "party" limitation for the "access provider" term for the same reasons that a "party" limitation is appropriate for the "NSP" term discussed above. In other words, and the parties appear to agree on this issue, to the extent a "party" limitation is appropriate for "NSP," it is likewise appropriate for the "access provider" term. For the reasons detailed previously, the Court rejects Plaintiff's proposed limitation of "hardware and/or software," as not being supported in the specification or the claims. Further, the Court finds that Plaintiff's limitation to a generic "hardware and/or software" limitation for both of the "NSP" and "access provider" terms provides little material difference to these separate terms. The Court finds that the intrinsic evidence, including the specification and claims of the '318 patent, requires the "access provider" to be a "party." The Court notes that, at this time, it is

19

not deciding the issue on whether the "NSP" and the "access provider" must be separate "parties" or may be the same "party."

Both parties agree that the "access provider" provides "network access information." Defendant, however, proposes that the access information has to be "authenticated access information." The Court is not convinced that this "authenticated" access information requirement is a necessary limitation for the "access provider" term in the context of claim 5 of the '318 patent. Further, the Court is not persuaded that the remainder of Defendant's proposed construction is appropriate or necessary for this term. For example, regarding the "user" limitation proposed in the Defendant's construction, claim 5 does not expressly recite a "user," and thus the Court finds that a "user" limitation is not necessary for the construction of the NSP term for this claim dispute.

The Court hereby construes "**access provider**" to mean "**a party that provides network access information.**"

## V. CONCLUSION

The Court adopts the above constructions set forth in this opinion for the disputed terms of the patent-in-suit. The parties are ordered to not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. However, the parties are reminded that the testimony of any witness is bound by the Court's reasoning in this order but any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 6th day of December, 2018.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE